**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman BLAKE E. TAYLOR**
**United States Air Force**

**ACM 38700**

**25 February 2016**

Sentence adjudged 18 July 2014 by GCM convened at Joint Base Lewis-McChord, Washington. Military Judge: Lyndell M. Powell.

Approved Sentence: Bad-conduct discharge, confinement for 60 days, and reduction to E-1.

Appellate Counsel for Appellant: Captain Travis L. Vaughan and Captain Annie W. Morgan.

Appellate Counsel for the United States: Lieutenant Colonel Jennifer A. Porter and Gerald R. Bruce, Esquire.

Before

MITCHELL, DUBRISKE, and BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

DUBRISKE, Judge:

Contrary to his pleas, Appellant was convicted by a panel of officer and enlisted members of both receipt and possession of obscene visual depictions of a minor engaging in sexually explicit conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1] The

---

[1] Appellant was also charged with possession of child pornography under Article 134, UCMJ, 10 U.S.C. § 934, for having "visual depictions of what appear to be minors engaging in sexually explicit conduct." The military judge found Appellant not guilty of this offense pursuant to Rule for Courts-Martial (R.C.M.) 917 as the animated images did not depict what appeared to be an actual minor.

charged specifications assimilated 18 U.S.C. §§ 1466A(a)(1) and 1466A(b)(1) under clause three of the general article.

Appellant was sentenced to a bad-conduct discharge, confinement for 60 days, and reduction to E-1. The convening authority approved the sentence as adjudged.

Appellant raises five allegations of error on appeal. First, based on the facts of his specific case, Appellant argues the incorporation of 18 U.S.C. § 1466A into Article 134, UCMJ, is unconstitutional as the statutory basis is vague, overbroad, and violates a constitutionally protected privacy interest. Second, assuming the statutory basis is upheld, Appellant claims his convictions were legally and factually insufficient. Third, Appellant alleges the military judge erred in providing the panel members with an expanded definition of interstate commerce in response to a question from one of the members during deliberations. Fourth, Appellant argues the military judge also erred in restricting cross-examination of the Government's expert as to community standards regarding obscenity. In conjunction with this specific assignment of error, Appellant also alleges the military judge provided an incorrect instruction on reasonable doubt. Finally, Appellant claims the specification alleging receipt of obscene material should be dismissed as it is multiplicious or, alternatively, results in an unreasonable multiplication of charges, with the specification alleging possession of obscene material.

*Background*

During a health and welfare inspection of Appellant's dormitory room, Appellant's first sergeant discovered children's clothing and sex toys in a desk drawer. Based on this discovery, Appellant was questioned by agents from the Air Force Office of Special Investigations (AFOSI). Appellant consented to a search of his laptop computer and related media, which contained a variety of animated images and drawings. Some of these animated images depicted pre-pubescent females engaging in sexual intercourse, anal intercourse, or oral sodomy with one or more adult males. A number of the children in these images appeared to be in pain or otherwise in physical or emotional distress due to the sexual activity. Appellant was present in his dormitory room when an AFOSI agent initially reviewed some of the animated images and drawings located on Appellant's computer and digital media. Appellant advised some of the females depicted in the images he downloaded were fictional characters from video or computer games.

During his subsequent interview with AFOSI, Appellant admitted to downloading Japanese "anime" from the Internet that depicted adults engaging in sexual activity with persons who appear to be minors. Appellant stated he saved these sexually explicit images from the Internet to either his computer or his digital media. Appellant noted some of the images he downloaded showed the child engaging in sexual activity with multiple adults. Appellant also confirmed that some of the images were of very young children, including those of "toddler" age. Appellant provided the agent with a list of

several websites, and noted most of the images the agent had previously viewed in Appellant's presence at his dormitory room came from those specific websites.

Although he stated he initially only downloaded non-pornographic anime, Appellant informed the agent he began to download images of sexual activity because he became interested in the sexual act itself. When asked why he started to focus on younger females engaged in sexual activity, Appellant advised he preferred adult females with smaller breasts. Appellant informed the agent he did not seek out images of actual children as he understood child pornography was illegal. Appellant did not believe his possession of anime or cartoon images depicting sexual acts between virtual adults and children was illegal. This belief was based on Appellant's limited personal research.

Additional facts necessary to resolve the assignments of error are provided below.

*Constitutional Challenges to the Charged Offenses*

Appellant asserts his convictions must be dismissed because the statute supporting the Article 134, UCMJ, specifications, 18 U.S.C. § 1466A, is unconstitutional as applied to his case. In supporting his constitutional argument, Appellant urges the statute, as applied, is overbroad, void for vagueness, and violated a constitutionally-protected privacy interest.[2]

We review de novo whether a statute is unconstitutional as applied to an individual case. *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012). In doing so, we conduct a fact-specific inquiry. *Id.* "Criminal statutes are presumed constitutionally valid, and the party attacking the constitutionality of a statute has the burden of proving otherwise." *United States v. Mansfield*, 33 M.J. 972, 989 (A.F.C.M.R. 1991), *aff'd*, 38 M.J. 415 (C.M.A. 1993). The moving party also bears the burden of developing a record at the trial level that establishes the statutory procedures were unconstitutional as applied to his or her case. *United States v. Vazquez*, 72 M.J. 13, 19 (C.A.A.F. 2013).

*1. The Statutory Provisions Are Not Constitutionally Overbroad.*

Appellant argues the two statutory provisions as applied to him were overbroad in that they could possibly criminalize speech that may have literary, artistic, political, or

---

[2] Appellant did not claim at trial that the underlying statutory provisions were vague or overbroad. As such, it could be argued that Appellant forfeited these specific claims absent plain error. *See United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013). We elect not to apply a plain error review of these issues as Appellant asserted a different First Amendment attack at the trial level. *See generally Citizens United v. Federal Election Commission*, 558 U.S. 310, 330–31 (2010) (stating that once a federal claim is properly presented, a litigant on appeal is not limited to the precise argument made below).

scientific value.[3]  In support of his argument, Appellant provides two examples of literary works that, if obscene, could be subject to criminal prosecution pursuant to 18 U.S.C. § 1466A.  These examples, Appellant argues, show the sweep of the challenged statute is impermissibly broad.

A statute is overbroad under the First Amendment,[4] and therefore unconstitutional, if "it prohibits a substantial amount of protected speech." *United States v. Williams,* 553 U.S. 285, 292 (2008); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002).  The challenged statute's overbreadth must be substantial, not only in the absolute sense but also relative to its plain sweep.  *Williams*, 553 U.S. at 292.  Appellant bears the burden of demonstrating substantial overbreadth exists from the text of the statute and the facts of the case.  *Virginia v. Hicks*, 539 U.S. 113, 122 (2003).

The Supreme Court has repeatedly recognized that the overbreadth doctrine is "strong medicine" and has, therefore, applied it sparingly.  *See New York v. Ferber,* 458 U.S. 747, 769 (1982).  To properly determine whether a statute reaches too far and is, therefore, overbroad, one must first examine the challenged statute to determine exactly what the statute covers with regard to speech.  *See Williams*, 553 U.S. at 293.

Appellant was charged and convicted of violating 18 U.S.C. § 1466A by both receiving and possessing obscene visual depictions of a minor engaging in sexually explicit conduct.  To be guilty of receipt under 18 U.S.C. § 1466A(a)(1), Appellant must have knowingly received an obscene visual depiction of any kind, including a drawing, cartoon, sculpture or painting, that depicts a minor engaging in sexually explicit conduct, provided the depiction had been mailed, shipped, or transported in interstate commerce by any means, including a computer.  18 U.S.C. §§ 1466A(a)(1) and (d).

Appellant's conviction for possession of obscene visual depictions under 18 U.S.C. § 1466A(b)(1) required Appellant to knowingly possess an obscene visual depiction of a minor engaging in sexually explicit conduct.  Similar to the receipt charge, the visual depiction possessed by Appellant must have also been mailed, shipped, or transported in interstate commerce by any means, including a computer.  18 U.S.C. §§ 1466A(b)(1) and (d).  It is against these two statutory bases that we examine Appellant's claims of error.

The statutory provisions alleged against Appellant in this case require the images be obscene as defined by *Miller v. California*, 413 U.S. 15 (1973).  *See United States v. Dean*, 635 F.3d 1200, 1205 n.4 (11th Cir. 2011); *see also Ashcroft v. A.C.L.U.*, 535 U.S. 564, 581 n.11 (2002) (noting that federal statutes dealing with obscenity are construed to

---

[3] Although he uses the term "as applied" throughout his brief, Appellant appears to also make a facial challenge to the statute by generally alleging the statute is overbroad and vague in the context of the First Amendment.  *See United States v. Stevens*, 559 U.S. 460, 473 (2010); *New York v. Ferber,* 458 U.S. 747, 768–69 (1982).
[4]  U.S. CONST. amend. I.

incorporate the standards in *Miller*).  Since establishing an obscenity standard in *Miller*, the Supreme Court has consistently held that obscene speech, that is sexually explicit speech that violates the fundamental notions of decency, is not protected by the Constitution.  *See Williams,* 553 U.S. at 288.  This includes "obscene material depicting (actual or virtual) children engaged in sexually explicit conduct."  *Id*. at 293.  Thus, the plain sweep of 18 U.S.C. §§ 1466A(a)(1) and 1466A(b)(1)—prohibiting the receipt and possession of obscene materials depicting sexual abuse of children—is significant.

Against this backdrop, Appellant bears the burden of showing the challenged statute prohibits a "substantial" amount of protected speech.  This burden requires Appellant to identify constitutionally protected materials targeted by 18 U.S.C. §§ 1466A and demonstrate that these protected materials are substantial, not only in an absolute sense, but also relative to the statute's significant sweep of obscene materials.  *See Dean*, 635 F.3d at 1206.  He has failed to meet this burden.  The mere fact that an appellant "can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  *Williams,* 553 U.S. at 303.

Here, Appellant suggests two possibilities, graphic depictions from Nabokov's *Lolita* or the Greek tragedy *Oedipus*, where protected speech could possibly be impacted by the reach of 18 U.S.C. § 1466A.  Unfortunately for Appellant, this court only considers the statute's application to real-world conduct and not fanciful hypotheticals or possible outcomes.[5]  *See id.* at 301–02.  Appellant points to no actual speech, substantial or otherwise, that the challenged statute would limit or restrict.  This fact is not surprising, however, given the statute specifically prohibits obscene visual representations of children engaged in sexually explicit conduct—images that are unlikely to ever possess serious literary, artistic, political, or scientific value.  Appellant has failed to carry his burden and, therefore, his argument must be rejected.

With regard to his specific case, Appellant hints that some images could have literary or artistic value as they could possibly be part of a broader story.  Having viewed all of the images charged in this case, we find there is no possible literary or artistic value in the material charged by the Government.  *See Kois v. Wisconsin*, 408 U.S. 229, 231 (1972) ("A quotation from Voltaire in the flyleaf of a book will not constitutionally redeem an otherwise obscene publication . . . .") (per curiam).

Throughout his brief, Appellant faults the military judge for failing to fully develop the record and provide this court with the necessary context regarding the charged images.  We reject this argument for two reasons.  First, as noted above, it is Appellant's burden to show the statute chills a substantial amount of protected speech.  Second, and more importantly, Appellant's failure to raise a facial challenge of the statute

---

[5] We would also note Appellant's two examples would be removed from criminal accountability by the *Miller* obscenity standard inherent to the statute's reach.  *See United States v. Dean,* 635 F.3d 1200, 1206 (11th Cir. 2011).

at trial, and further develop the record, cannot now be used to castigate other participants. Having reviewed the entire record, we are not convinced the impermissible applications of 18 U.S.C. § 1466A far outnumber any permissible ones. *See United States v. Stevens*, 559 U.S. 460, 481 (2010). As such, like the Federal circuits that have addressed this issue, we do not find that the statutory basis is overbroad. *See United States v. Schales*, 546 F.3d 965, 971–72 (9th Cir. 2008); *United States v. Whorley*, 550 F.3d 326, 336–37 (4th Cir. 2008); *Dean*, 635 F.3d at 1204–09.

### 2. *The Statutory Provisions Are Not Void for Vagueness.*

Appellant also claims that the statutory basis for his conviction is constitutionally void for vagueness. In support of this argument, Appellant alleges 18 U.S.C. § 1466A did not properly put him on notice that the receipt and possession of fictional cartoon characters is criminally punishable. Appellant appears to argue the statute's use of term "minor" would cause a reasonable member of the public to believe the image in dispute must depict an actual or real person under the age of 18 years.

Due process requires "fair notice" that an act is subject to criminal sanction, as well as fair notice of the standard that is applicable to the forbidden conduct. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003). A law is "void for vagueness" if "one could not reasonably understand that his contemplated conduct is proscribed." *Id.* (quoting *Parker v. Levy*, 417 U.S. 733, 757 (1974)). To avoid being found unconstitutionally vague, a criminal statute must define the violation with sufficient definiteness that ordinary people can understand what activity is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357 (1983). The Constitution does not mandate impossible standards, but instead only requires statutory language that conveys a definite warning to the proscribed conduct when measured against common understanding and practices. *Hamling v. United States*, 418 U.S. 87, 111 (1974).

Conduct that is not specifically listed in the Manual for Courts-Martial (MCM) may be prosecuted under Article 134, UCMJ. *See Vaughan*, 58 M.J. at 31. However, our superior court has recognized that a service member must likewise have "fair notice" that conduct is criminally punishable before being charged with a violation of Article 134, UCMJ. *Id.* This notice can be provided by "the MCM, federal law, state law, military case law, military custom and usage, and military regulations." *Id.*; *see also MCM*, pt. IV, ¶ 60.c.(4)(b)–(c) (permitting offenses under federal and state law to be charged under Article 134, UCMJ).

Here, there is a federal criminal statute that provides Appellant with the necessary "fair notice" regarding the criminality of his misconduct. *See United States v. Saunders*, 59 M.J. 1, 7 (C.A.A.F. 2003). Additionally, as noted by the Ninth Circuit in *Schales*, the Supreme Court has repeatedly rejected vagueness challenges to statutes regulating

obscene conduct. *Schales*, 546 F.3d at 972–73. Given the challenged statute in Appellant's case also applies the obscenity standard previously upheld by the Supreme Court, we agree with the Ninth Circuit that 18 U.S.C. § 1466A is not facially void for vagueness. *Id.* at 973.

With regard to Appellant's claim that he was not personally on notice that the receipt and possession of fictional cartoon characters is criminally punishable, a plain reading of the statute fails to support his claim.[6] In *United States v. Bowersox*, 72 M.J. 71 (C.A.A.F. 2013), our superior court rejected a similar complaint regarding the interpretation of 18 U.S.C. § 1466A. The court, in so holding, recognized § 1466A(c) of the statute expressly provided that the minor depicted in the visual representation need not actually exist. *Bowersox*, 72 M.J. at 74. Additionally, our superior court also believed the terms drawings, cartoons, and computer generated images did not necessarily or logically require a real or actual minor and, therefore, these terms buttressed the clear language of § 1466A(c).[7] *Id.* Given the challenged statute clearly encompassed the computer-generated anime in the appellant's possession, the constitutional challenge was rejected. We likewise see no reason to sustain Appellant's challenge to the statute in this instance.

### 3. Appellant's Conduct was not Constitutionally Protected.

Finally, as argued at trial, Appellant alleges his possession of obscene materials within his dormitory room is constitutionally protected conduct.[8] Appellant relies solely on the Supreme Court's opinion in *Stanley v. Georgia*, 394 U.S. 557 (1969), in which the Court rejected as unconstitutional a state obscenity statute that effectively prohibited the possession of obscene materials within a person's private home. Following *Stanley*, Appellant argues his dormitory room is akin to a private residence, thereby protecting his possession of obscene materials in this case. The military judge denied Appellant's motion finding, in part, that the required element of interstate commerce took Appellant's case outside the protection afforded by *Stanley*.

In *Stanley*, the Supreme Court found a limited right to possess obscene materials in the privacy of one's own home. *Stanley*, 394 U.S. at 568. In discussing the

---

[6] Appellant's claim that he did not personally know that his conduct was unlawful does not invalidate a statute as void for vagueness. *See United States v. Nelson*, 712 F.3d 498, 508 (11th Cir. 2013); *see also United States v. Williams,* 553 U.S. 285, 304 (2008) ("There is no First Amendment exception from the general principle of criminal law that a person attempting to commit a crime need not be exonerated because he has a mistaken view of the facts."). In short, Appellant's personal ignorance of 18 U.S.C. § 1466A does not aid in his constitutional challenge. *See Cheek v. United States*, 498 U.S. 192, 199 (1991).

[7] The *Bowersox* analysis is further supported by the Supreme Court's recognition that obscene material comes in many forms. *See Kaplan v. California*, 413 U.S. 115, 119 (1973) (noting no distinction as to the medium of the expression when dealing with obscene material). Obscenity can manifest itself "in conduct, in the pictorial representation of conduct, or in the written and oral description of conduct." *Id.* Obscene cartoons such as those charged in Appellant's case should be treated no differently than other fictional materials criminalized as obscene.

[8] Appellant's motion at trial did not challenge the specification alleging receipt of obscene material.

Constitution's protection of the right to receive information and ideas, the Court famously noted:

> Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.

*Id.* at 565.

Since issuing this opinion, however, the Supreme Court has made clear that its holding in *Stanley* is a narrow one. *See United States v. Reidel*, 402 U.S. 351, 355 (1971). In particular, with regard to Appellant's case, the Court has held the zone of privacy that *Stanley* protected does not extend beyond the home as Congress has the power to prevent obscene material from entering the stream of commerce. *See United States v. Orito*, 413 U.S. 139, 141–42 (1973).

> We are not disposed to extend the precise, carefully limited holding of *Stanley* to permit importation of admittedly obscene material simply because it is imported for private use only. To allow such a claim would be not unlike compelling the Government to permit importation of prohibited or controlled drugs for private consumption as long as such drugs are not for public distribution or sale. We have already indicated that the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others. Nor is there any correlative right to transport obscene material in interstate commerce. It follows that *Stanley* does not permit one to go abroad and bring such material into the country for private purposes. *Stanley*'s emphasis was on the freedom of thought and mind in the privacy of the home. But a port of entry is not a traveler's home.

*United States v. 12 200-Ft. Reels of Super 8mm Film*, 413 U.S. 123, 128–29 (1973) (citations omitted).

Applying its narrow reading of *Stanley*, the Supreme Court has repeatedly rejected claims that there exists a right to receive obscene materials in the home. *See Reidel*, 402

U.S. at 354–55 (rejecting the notion that *Stanley's* recognition of the right to possess obscenity in the privacy of the home means there is a right to deliver the material through channels of commerce); *Smith v. United States*, 431 U.S. 291, 307 (1977) ("*Stanley* did not create a right to receive, transport, or distribute obscene material. . . ."); *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 376 (1971) (holding that a private user is not entitled to import obscene material).

Given current Supreme Court precedent, it is clear the military judge's decision to deny Appellant's constitutional challenge at trial was the correct one. Appellant was not charged with simple possession of obscene materials. Instead, the challenged specification alleged Appellant possessed obscene materials transported through interstate commerce. We believe this distinction is sufficient to remove Appellant's case from the protection of *Stanley*.[9] *See United States v. Handley*, 564 F. Supp. 2d 996, 1001 (S.D. Iowa 2008) (rejecting *Stanley* challenge to § 1466A as material was moved in interstate commerce); *Bowersox*, 72 M.J. at 80 (Stucky, J., dissenting) (communicating or transporting obscene material in violation § 1466A would not be entitled to the protection afforded by *Stanley* as the activity is beyond mere possession); *cf. Whorley*, 550 F.3d at 332–33 (finding no *Stanley* violation with a similar obscenity statute given the focus is on movement of obscene material in interstate commerce).

*Sufficiency of the Evidence*

Appellant next claims the evidence produced at trial was factually and legally insufficient to support his convictions for receipt and possession of obscene materials depicting sexual abuse of children. Appellant raises two specific claims: (1) there was insufficient evidence the charged images were transported via interstate commerce; and (2) there was insufficient evidence Appellant knowingly received or possessed the charged images.[10]

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of

---

[9] Given our holding, we need not address whether Appellant's dormitory room was tantamount to a private home.

[10] Appellant also claims his convictions were improper because the charged images do not depict a real or actual minor. This issue was addressed when discussing Appellant's constitutional challenge of 18 U.S.C. § 1466A.

guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner*, 25 M.J. at 324; *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

Appellant's two claims of error surround his belief the prosecution failed to fully employ its computer forensic expert to establish the elements of the offenses charged in this case. In doing so, however, Appellant ignores his multiple statements provided to AFOSI which were admitted against him at trial. While the admitted images of sexually explicit conduct were obviously necessary to the prosecution's case, both as direct and corroborative evidence, it was Appellant's detailed admissions that established the elements he now claims were lacking at trial.

With regard to his first claim of error, Appellant argues the prosecution was required to show that either Appellant's Internet service provider engaged in interstate transactions in the normal course of its business, or the charged images were actually transported between two states when downloaded by Appellant. As the Government did not establish a state-to-state connection, Appellant asserts his convictions cannot stand.

The court members were instructed, over defense objection, that material traveling over the Internet is by its very nature within the definition of interstate commerce.[11] While this instruction established the Internet as a proper means of commerce, the court members still had to determine Appellant used the Internet to download the challenged images. *See United States v. Pierce*, 70 M.J. 391, 395 (C.A.A.F. 2011). Appellant admitted to authorities that he used his computer and Internet service to download and store anime that depicted children engaging in sexually explicit conduct. Appellant also advised during his interview that the images examined by the AFOSI investigator in Appellant's presence were the types of depictions he downloaded from the Internet. While Appellant did not discuss with investigators each image eventually charged by the Government, his admissions were sufficiently detailed to sustain the finding by the court members that the images were obtained via the Internet and, therefore, were transported in interstate commerce.

---

[11] Appellant's objection to this instruction is addressed in more detail below as a separate assignment of error.

Appellant's next claim of error also fails for similar reasons. Although Appellant may not have known that the images he downloaded were contraband, there is no question from his admissions to investigators that he sought out, downloaded, and stored cartoon images of children engaged in sexually explicit conduct. Appellant was present when an investigator viewed anime images of children on his computer. When later discussing where he found his materials online, Appellant advised the images viewed by the investigator were the types of images that he typically downloaded and stored on his computer. Appellant also identified websites he accessed to download the images stored on his computer. The name of one of these websites was etched on an image stored on Appellant's computer media. Given this evidence, we are confident Appellant's convictions are both legally and factually sufficient.

*Military Judge's Instructions on Interstate Commerce*

Without objection, the military judge provided the court members prior to their deliberations with instructions on interstate commerce. The instruction, apparently based in part on federal case law provided by trial counsel, defined interstate commerce as:

> [C]ommerce or travel between the states, territories, and
> possessions of the United States. Commerce includes among
> other things: travel; trade; transportation and communication.
> It is not necessary for the government to show that the
> accused actually intended or anticipated an effect on interstate
> commerce. All that is necessary is that the government prove
> that the accused's actions affected interstate commerce no
> matter how minimal.

Trial defense counsel focused on the element of interstate commerce during his findings argument, advocating that the Government was required to prove the charged images were moved between two states.

After deliberating for approximately two hours, a panel member presented a question to the military judge regarding interstate commerce. The member asked whether Appellant had to take his computer data across state lines to impact interstate commerce. The member also inquired whether Appellant's use of bandwidth would affect interstate commerce if his use denied someone else access to that bandwidth.

The military judge, after hearing from both parties, decided to issue a clarifying instruction, over defense objection, based on federal and military case law.

> [B]ecause of the interstate nature of the [I]nternet, if you find
> beyond a reasonable doubt that the accused used the [I]nternet
> in downloading the images alleged, then that communication

> traveled in interstate commerce. Material traveling over the [I]nternet by its very nature is within the definition of interstate commerce.

On appeal, as at trial, Appellant claims this clarifying instruction lessened the prosecution's burden by only requiring proof that Appellant's conduct affected interstate commerce, instead of mandating more substantial proof that the images actually travelled between two states.

It is the military judge's duty to properly instruct the members at trial. *United States v. Quintanilla*, 56 M.J. 37, 83 (C.A.A.F. 2001). A military judge's decision to provide an instruction is reviewed for an abuse of discretion. *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996). However, the propriety of the instructions given by the military judge is reviewed de novo. *Id.* In examining instructions provided by the military judge, an appellate court examines "whether the instructions as a whole provide meaningful legal principles for the court-martial's consideration." *United States v. Truman*, 42 C.M.R. 106, 109 (C.M.A. 1970); *see also Jones v. United States*, 527 U.S. 373, 391 (1999) (stating that each instruction must be evaluated in the context of the entire charge). "The military judge has considerable discretion in tailoring instructions to the evidence and the law." *United States v. Hopkins*, 56 M.J. 393, 395 (C.A.A.F. 2002).

As an initial matter, we do not believe the military judge abused his discretion in responding to the court member's question with a clarifying instruction. *See United States v. Barnett*, 71 M.J. 248, 253 (C.A.A.F. 2012). Appropriate instructions are those instructions necessary for the members to arrive at an intelligent decision concerning an accused's guilt. *United States v. Baker*, 57 M.J. 330, 333 (C.A.A.F. 2002). To make an intelligent or rational decision on a person's guilt, members should consider the elements of a charged offense, the evidence pertaining to those elements, and applicable principles of law necessary to decide the case. *Id.* As the instruction in response to the member's question addressed an element of the charged offense, we believe it was appropriate for the military judge to provide further guidance to the panel.

We also believe the military judge's clarifying instruction was substantively complete and correct. *See United States v. Wolford*, 62 M.J. 418, 419 (C.A.A.F. 2006). As recognized by our superior court in *Pierce*, every court to address the impact of the Internet on interstate commerce agrees with the "unremarkable proposition that the Internet is a means of interstate commerce." *Pierce*, 70 M.J. at 395. As such, the military judge properly instructed the panel that Appellant's transmission of images by means of the Internet was tantamount to moving images across state lines and, therefore, constituted transportation in interstate commerce. *See United States v. MacEwan*, 445 F.3d 237, 244 (3d Cir. 2006); *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997).

The clarifying instruction also properly informed the members of their duty, as the finder of fact, to determine whether Appellant actually used the Internet to download the charged images. *See Pierce*, 70 M.J. at 395. For these reasons, we reject Appellant's assignment of error.

*Military Judge's Ruling Limiting Defense Cross-Examination*

During cross-examination of the prosecution's computer forensic expert, trial defense counsel attempted to buttress his own belief that Appellant was the first member of the Department of Defense to ever be prosecuted solely for possession of obscene anime images. One question, asking the expert to confirm that he had not seen a criminal case in which the government had only charged anime images, drew a relevance objection from the prosecution.

Trial defense counsel argued the question was relevant and appropriate to assist the panel members in determining the community standard for obscenity. The military judge disagreed, noting the question really went to prosecutorial discretion regarding charging. Based on his belief that the question was not relevant to whether the images charged in Appellant's case were obscene, the military judge sustained the prosecution's objection. On appeal, Appellant claims the military judge's ruling to this one question violated the Confrontation Clause as it improperly limited his right to cross-examination and ability to mount a defense to the charged offenses.

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Clayton*, 67 M.J. 283, 286 (C.A.A.F. 2009). Under the abuse of discretion standard, we review the military judge's findings of fact under the clearly erroneous standard and his or her conclusions of law de novo. *Id.*

We do not believe the military judge abused his discretion. The question of whether an image violates the contemporary community standard was for the court members to determine. *Smith*, 431 U.S. at 308. The fact the prosecution's expert was not aware of a criminal case with offenses similar to those alleged against Appellant would not aid the panel in answering this critical question.

Appellant also argues the military judge further restricted his right to present his case when he instructed the court members on proof beyond a reasonable doubt. In particular, Appellant argues the instruction is flawed as it informs the members that they "must find" an accused guilty if they are firmly convinced by the evidence. Appellant provides no legal authority in support of this claim.

As discussed above, we review de novo the military judge's instructions to ensure that they correctly address the issues raised by the evidence. *Maxwell*, 45 M.J. at 424. Here, however, where trial defense counsel made no challenge to the instruction now

contested on appeal, the matter has been forfeited absent plain error.[12] *See* Rule for Courts-Martial (R.C.M.) 920(f). If we find error, we must then determine whether the error was harmless beyond a reasonable doubt. *United States v. Medina*, 69 M.J. 462, 465 (2011).

The language used by the military judge in Appellant's case is—and has been for many years—an accepted reasonable doubt instruction used in Air Force courts-martial. *See, e.g.*, *United States v. Sanchez*, 50 M.J. 506, 509–10 (A.F. Ct. Crim. App. 1999); *see also United States v. Gibson*, 726 F.2d 869, 874 (1st Cir. 1984) (upholding similar language). It was also offered by our superior court as a suggested instruction. *See United States v. Meeks*, 41 M.J. 150, 157 n.2 (C.M.A. 1994) (citing Federal Judicial Center, Pattern Criminal Jury Instruction 17–18 (1987)). As such, we cannot say the military judge committed error, plain or otherwise, in giving this reasonable doubt instruction in Appellant's case.

### *Multiplicity and Unreasonable Multiplication of Charges*

Finally, Appellant claims his conviction for receipt of obscene materials should be set aside as it is multiplicious with his conviction for possession of obscene materials. Alternatively, Appellant argues the same specification should be dismissed as an unreasonable multiplication of charges.

Appellant raised by motion the issue of unreasonable multiplication of charges prior to his entering of pleas. After reviewing the motion, the military judge confirmed with trial defense counsel that his motion was only raising the theory of unreasonable multiplication of charges. Trial defense counsel confirmed the defense was not specifically challenging the specifications on the basis of multiplicity. Because of this discussion, we believe Appellant's multiplicity claims on appeal have been waived.[13] *See United States v. Elespuru*, 73 M.J. 326, 328–29 (C.A.A.F. 2014); *United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009).

With regard to unreasonable multiplication of charges, trial defense counsel argued the same images were used to support both specifications, thereby exposing Appellant to additional punitive liability. Appellant requested the dismissal of charges as the primary remedy. Provided a specification was not dismissed, Appellant requested the offenses be merged for the purposes of sentencing.

---

[12] Although we recognize that the rule speaks of "waiver," this is in fact forfeiture. *United States. v. Sousa*, 72 M.J. 643 (A.F. Ct. Crim. App. 2013).

[13] Because we have found waiver, there is no need to distinguish our opinion in *United States v. Williams*, 74 M.J. 572 (A.F. Ct. Crim. App. 2014), which found, based on the facts of the case, that possession of child pornography was multiplicious with a specification alleging receipt of the same images.

Applying the relevant case law, the military judge declined to grant dismissal of any specifications.  However, the military judge merged the two specifications for sentencing purposes as requested by trial defense counsel, reducing Appellant's maximum sentence to confinement in half to 10 years.  On appeal, Appellant argues the military judge's failure to dismiss a specification was error.

A military judge's decision to deny relief for unreasonable multiplication of charges is reviewed for an abuse of discretion.  *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012).  "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion.  The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."  *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)).

"[T]he prohibition against unreasonable multiplication of charges has long provided courts-martial and reviewing authorities with a traditional legal standard—reasonableness—to address the consequences of an abuse of prosecutorial discretion in the context of the unique aspects of the military justice system."  *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001).  R.C.M. 307(c)(4) is the current regulatory expression of that prohibition, directing that "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."  The principle provides that the government may not needlessly "pile on" charges against an accused.  *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994).

Our superior court has endorsed the following non-exhaustive list of factors in determining whether unreasonable multiplication of charges has occurred:

> (1) Did the [appellant] object at trial that there was an unreasonable multiplication of charges and/or specifications?;
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;
> (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Quiroz*, 55 M.J. at 338–39 (quoting *United States v. Quiroz*, 53 M.J. 600, 607 (N.M. Ct. Crim. App. 2000)) (line breaks added) (quotation marks omitted).

After reviewing the military judge's findings in this case, we do not believe he abused his discretion.  The challenged specifications each charged different images, some

of which were acquired at different times by Appellant and stored on separate computer media. *See United States v. Dudeck*, 657 F.3d 424, 430 (6th Cir. 2011) (permitting conviction for both possession and receipt of child pornography if separate conduct is found to underlie the two offenses); *United States v. Polouizzi*, 564 F.3d 142, 159 (2d Cir. 2009) (finding no double jeopardy violation when a possession of child pornography conviction was based on images not used to support a separate receipt conviction). As such, we agree with the military judge that the charges were aimed at separate criminal acts. The military judge found the two primary *Quiroz* factors weighing in Appellant's favor were the exaggeration of his criminality and increase in his punitive exposure. The military judge decided to invoke the remedy of merger for purposes of sentencing given these findings. We find no basis to fault the military judge for this discretionary action in granting Appellant relief. *See Campbell*, 71 M.J. at 24 n.9.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[14] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

---

[14] The initial promulgating order did not reflect that the military judge sua sponte granted a motion for a finding of not guilty of the original charge in accordance with R.C.M. 917. We direct a corrected promulgating order to properly reflect the finding was imposed by the military judge and not the court members.